So we'll proceed to hear oral argument in our first case, number 20-3780 and 20-425, cross appeals in New York State Nurses Association v. The Nyack Hospital. Mr. Warren? Good morning. Good morning. My name is Jay Warren. I represent plaintiff, appellant, cross appellee, New York State Nurses Association benefits funds. People make mistakes. The question in this case is who will determine whether the funds 45 contributing employers have made mistakes in self-reporting their monthly contribution reports required by applicable collective bargainings with NYSNA, the New York State Nurses Association. Should the funds independent auditor determine whether an employer's made mistakes in its contribution reports by reviewing payroll records for all employees, as the Nyack Hospital agreed to allow when it agreed to be bound by the funds trust agreement? Or should a contributing employer self-audit its contribution reports when the employer decides which employees are in the classifications the auditor will be allowed to review as the court below mistakenly decided? The funds to audit the payroll and wage records of any employer in connection with employer contributions and reports. There is a connection between the payroll records of all employees and employer contribution reports. Mr. Warren, I would like to interrupt you at this point for a minute. Is there any reasonableness limitation that we should read into the authority to audit that is set out in the contractual documents? As I understand your position, it's only so long as there's no evidence of bad faith the trustees can audit whoever they want. But I have some difficulty understanding why it could possibly be relevant to determining whether correct contribution amounts have been made to audit janitors and the CEO of the hospital. Could you explain to me why they should fall within the auditor's ability to inquire into quite confidential personnel records? Your Honor, the premise of the question assumes an objective mutually agreeable reality. That all that there is a standard, there is a list of everyone who's registered nurse and everyone who's a janitor. But the way payroll audits work is the auditor looks at the entire payroll register and looks for pay rates that are similar to the collectively bargained pay rates for people in the bargaining unit and then compares that list with the list that's been supplied by the hospital of the people the hospital believes is in the bargaining unit. It's true though, right, that the collective bargaining agreement covers primarily registered nurses. The collective bargaining agreement covers all employees who have the permit to work in a position for which a registered nurse is required. That's what the collective bargaining agreement says. But the fund has no way of knowing whether the hospital has accurately classified people as registered nurses. That's the reason why you need to look at the entire payroll, all the payroll registers, to see if there are people whose pay rates indicate they might be included in the bargaining unit and that's the purpose of the payroll audit. Otherwise there's no check, there's no means for the hospital basically to hide people if it were trying to do that or if it just makes a mistake. Mr. Warren, if a employee was misclassified by the hospital and was not classified as a registered nurse, contribution was not made by the employer in respect of that employee. An employee later, notwithstanding having not received a SPD, wanted to apply for and enroll for benefits, would the fund be liable to that employee for the benefits? Your Honor, the issue, the real issue is, is NIAC responsible for paying contributions even if the fund were not responsible for paying benefits? This is an insurance program. It's not a retirement plan where everybody has a fixed amount of money they're going to get based on the hours they work. All of these employees who are in the fund are eligible for benefits. The funding source is contributions for the entire group, so there'll be many people in the group who never get benefits. That's my question, is if somebody is eligible but a contribution is not made in respect of that person, is the fund still responsible for paying out the benefits if the employee nonetheless enrolls? That is a question that I don't have the answer to, but the question I do have the answer to, Your Honor, is that the collective bargaining agreement is clear that contributions are owed for people in the bargaining unit whether or not they enroll in the fund. Can I ask you, Mr. Warren, to go back to a point you alluded to a little bit ago. There's a definition in the collective bargaining agreement that I don't quite understand, and it's this description of the bargaining unit as including RNs or people in positions for which you need to be an RN. I don't understand how that's not a Venn diagram where one category is wholly subsumed within the other. How can you have a job, that last clause, of positions for which you need to be an RN that doesn't already fall into the class of people who are RNs? Is there some sort of higher classification of somebody who's more qualified than an RN but is not an RN? Can you explain what that clause means to me because I'm confused by it. Your Honor, I will do my best. There is nothing in the record that addresses what the parties meant by it. I will also say there is a case we cited that said if the meaning of this is ambiguous, it's not a bar to an audit because that gets sorted out. I know that. Okay. My explanation, the best explanation I can come up with that doesn't render the clause superfluous is that the hospital may have some kind of staffing shortage where they've assigned somebody to a position who even though they don't have the formal qualifications, they've been assigned to work in that position and the collective bargaining agreement says they're covered even if they don't have the required certification. That's my understanding of how it would come up. Okay. Let me ask one last question before you sit down. Would you agree that we're on abuse of discretion review? We're looking at the district court's order or failure to order an audit specific performance of the contract. It seems to me that although there are subsidiary legal questions that ultimately we're on abuse of discretion review. Would you disagree with that? I disagree, Your Honor. I think the court made a clear legal mistake subject to de novo review when it placed the burden of proof on the fund to prove that the where central states required the employer to present evidence that the fund would the trustees were breaching their fiduciary duties and conducting the audit and I think that's a legal determinative legal question in this case. All right. Thank you very much. We'll hear from your from the hospital. Thank you, Your Honor and may it please the court. The district court correctly held that the records review sought by the fund exceeded any reasonable scope. The fund wanted to examine pretty much every financial document that the hospital possesses and scrutinize every salary from CEO to janitor without regard to whether or not these were individuals who could be participants in the fund. The district court narrowed that scope to our ends only which recognizes that the universe that might even be marginally relevant to the fund's task could expand no further than those records. Now we ask you to narrow that a little bit further still to the records of the bargaining unit employees and that includes the entire universe of eligible participants which are full and part-time representative registered nurses and the temporary and per diem registered nurse employees who proper classification might affect the contribution obligation. Anything more we believe would overstep the limitations as imposed by central states and by this is can I answer your question and I'll be a little provocative in my question and I don't and I mean to have it understood as a hypothetical but what if the hospital lied? Isn't that the point of an audit to make sure you're telling the truth? So why should they take it at face value if the question is do we have everybody who's in the bargaining unit? You say I'll tell you everybody who's in the bargaining unit. Well let's say you lied. Isn't the point of an audit to check you to make sure you're not lying? Your honor there are checks upon that particular issue which is the union has the list of who's in the bargaining unit. We have the list who's in the bargaining unit. We provide every month to the fund who we've made contributions on behalf of and we provide them on the annual basis the who have opted out. So they have all of those records to check this. But Mr. Pope if you were relying if the trustees are the trustees required to rely upon the good faith of the employer and the union I mean isn't that exactly a concern that both the the supreme court and the 11th circuit which this court cited favorably in the in the vertex case expressed that the trustees have an independent obligation to make sure that they are sending out SPDs to the right people that shouldn't be able to be bargained away by the union and the employer. Well your honor that's that's true if people outside the bargaining unit could potentially be relevant potentially be participants that can't be the case here by definition to be a participant in this fund and to be a participant in the programs you must be a bargaining unit member who's represented by the union. What if you didn't disclose all the RNs? If we didn't disclose them to whom your honor? To the trustees. To the trustees? Yeah. How do we know what if what if there were a hospital who lied and you held back a dozen RNs? Isn't the point of the audit to see whether you actually turned it over? Because it seems to be no answer now for example you could say well you know now I'm before a district court and the district court ordered me to turn it over and you know if I didn't turn it over it would be contempt and why would I do that? But presumably one would hope that most audits don't end in litigation with court orders right? That that is that is the aspiration your is the point of the audit to confirm that you're telling the truth? Yes and no your honor it is to confirm that we're telling the truth with regard to the universe of people who can be a participant. Right so who's to say you haven't lied about who could be a participant? Well we don't define who can be a participant your honor is defined in the collective bargaining agreement is defined in the trust agreement and it has to be a member of the bargaining unit of NYSDA. Now that means that NYSDA has that list and we have that list they have a check on us we can't lie. Well what if you left out 10 people who are eligible for the bargaining unit and the union doesn't know about it? Isn't the point of the audit to figure out whether you're telling the truth? Well your honor it's not the trust obligation to police the bargaining unit when the union and the trust have both agreed that the bargaining unit are the only people who can be eligible to participate in this fund. Mr Pope let me ask you a hypothetical question. Let's assume that the trustees ex ante at the very beginning decide that the best way to preserve the financial integrity of the fund and to make sure that the eligible employees are getting the relevant documents they're informed of their rights is to have an audit of all of the employees precisely to make sure Judge Nardini's point that that neither the union nor the employer is misreporting. They have an independent obligation they decide that it's in the fund's interest to do an audit of all of the employees and they sit down with the employer and they say that to the employer and the employer agrees and they document that. Is there anything in ERISA that and let's assume further that they discuss the issues of confidentiality and the trustees agree that they're not going to give this information to the union. Is there anything in ERISA that would prohibit the trustees management and union representatives from striking such an agreement with the employer? I don't believe there's anything that ERISA would prohibit an employer from agreeing to that level of audit. If that's right then isn't our obligation just to and the judge's obligation to construe the language of the trust agreement and see whether that is precisely the agreement that was struck in this case. Your honor the language of the trust agreement is in fact important on that issue and it is as the the supreme court said in central states if it limits the trustees power it must be enforced against the trustees. What if it increases the trustees powers or defines them in a way that you don't like? Well if it increases or defines them in a way that we don't like then you have to measure it under the various yardsticks that the court put forth. For instance it must be a prudent actions furthering the legitimate interests of the funds. It must not be in furtherance of union objectives and it must not be something that's designed to simply expand plan coverage beyond what has been agreed to. Those are not things that they can do and that part of that comes out of one aspect of ERISA which is the duty of loyalty and the various fiduciary duties that they are not to press forward to use the resources of the trust to try to go beyond what they're entitled to under the collective bargaining agreement and under the trust agreement. So could you explain how you would distinguish the two cases? Well I think it's a good question. I think it's a good question because I think it's a good question because I think it's a good question because I think there was a provision in the trust agreements there that's created an obligation on the employer to allow the fund to have the records of certain of a broadcast of employees but how would you distinguish the two cases? Well I would distinguish it in several ways. First the language is much much different in central states. If you look at it and it's on page 567 of the opinion and I know that the fund quoted in their brief as well it's much broader language, much more specific and it has to do with a very different kind of workforce. It's not a workforce that has multiple unions. It's not a workforce in which the part the obligation on contributions is defined by who the worker is rather than who the work is and that was a concern in central states was and it's concerned in many of these cases. In many of these cases the obligation for contribution is not about identifying which people are eligible to participate but about identifying what work is covered by the collective bargain agreement in order to assess the contribution obligation. So do those two factors that you've mentioned so far the fact that other unions are involved and the mechanism for determining the scope of the contribution obligation, do they contribute in any way toward the presumption that the hospital's records are going to be generally accurate because there are other kind of watchdogs in place, the other unions, the employees know their participation rights, contribution amounts are fixed in another way? I believe they do your honor and I would add one other watchdog so to speak on top of that which is we're talking about a benefit that is felt at the time you're supposed to receive it. Now when in central states they were talking a great deal about the fact that pension benefits, they might be traded off by a union because they're in the future and that union has to worry about its members today. The members today care whether or not they have health care and if they're not covered by the fund and if they're not in it or they're not getting their incentive because that's the other part of this benefit is if they don't enroll in the fund they get an incentive payment from the employer for having not done it. They don't get those things, they're going to speak up. They know what they want and they're going to get it. Mr. Pope, can you answer the question I asked your adversary? Assume that a registered nurse is that the employer and the union both make a mistake or they decide as sometimes happens that they want to compromise the rights of a member and they don't inform that registered nurse of his or her rights. The registered nurse figures out that he or she is eligible and wants to enroll. Is that person going to be able to enroll even though a contribution has not been made? I honestly don't know how the fund would treat them based on what I've seen of the fund's documentation. They would not allow a person to enroll for whom a contribution is not made but that's really their decision. I think that the issue there would become a very messy situation of whether or not they could compel their participation somehow and if they were able to get an order that compelled their participation then the employer would obviously become obligated for a contribution at that time. Right, right, right. So let's assume that the employer then becomes, you know, doesn't have the money to satisfy its obligation. Doesn't the union, doesn't the plan have an interest in financial integrity in making sure that everybody who is potentially eligible they receive contributions for and that they don't have to after the fact bring a collection action? Well, I mean yes and no. They have an interest in seeing that the contributions are made for the people who are reported to them as participating in this fund. As I mentioned kind of in passing, not everybody has a right or not everybody has to participate in the fund. If you're a full-time employee you can choose to opt out and you get paid an incentive by the employer for that. You get paid and that's a negotiated incentive in the collective bargaining agreement you'd be $2,500 for not participating in the health, in the health care benefit. So there are a lot of moving parts there, your honor, about it and that's not $2,500 the fund gets. That's $2,500 that the individual gets. So the fund can't count on whether or not somebody's going to be a part of this or not and whether or not how that's going to happen for their financial integrity. Their financial integrity issue is that they receive the contributions for the people who are reported to them as participating in a particular month. So we're in February of 2021. If we report to them that there are you know 350 or 400 nurses who want to be participating in the fund, we have to remit to the contribution, the monthly contribution for each one of those and that's what their interest is because they have those people down on their books, those are the people they have to cover. If somebody, as you say, one found out that they were left out at some point in the past, there wouldn't, I don't think that there would be any obligation on the fund for them not having participated in the past, they would be entitled to participate in the future. That's my point, they're entitled to participate in the future but yet the employer would not have in the past have made the contributions in respect of that employee. Right, and this is a non-actuarial benefit, your honor, so it's not whether or not I made the contribution last year for an employee who participates this year because employees can change from year to year whether or not they have employment and be stuck with that throughout the term of your employment. So it can change from year to year and just like any other type of health care, you know, we pay the, we're paying to them essentially a premium. I believe they even use, I think they even go out and purchase in the market health insurance in order to cover their own obligations so you know the premiums are being covered for the time in which the person is participating and that's really what the fund is about and that's what our contribution obligation is about is to ensure that they receive the money that will allow them to pay the premiums for the people who are participating. Can I ask one more question, and I apologize, I know we're keeping you beyond your time but I'd like to ask you the same question I asked opposing counsel as to the meaning of the term in the collective bargaining agreement. I understand how it covers RNs but I don't understand what that additional term is that says, and I can't remember the exact language, which is every person employed in a position which requires a registered professional nurse. I imagine that it's not supposed to be superfluous language but I guess I'm not familiar enough with the situation to understand. So again, if you could maybe do your best to explain to me what that term is and let me just skip ahead. Obviously, one of the reasons I want to know that is if by the text of the CBA there's a category of person who may be covered by the collective bargaining agreement who is not in fact an RN, then wouldn't the district court's ruling be erroneous, whether an abuse of discretion or whatever, if it limited disclosures in the audit to only RNs? So I don't know if you could shed any light on what does that term in the CBA mean? Your honor, I believe what it means is, and I don't think it means that there is such a thing as a position where you do not have a registered nurse permit and you're working in work that requires a registered nurse permit. I believe that it refers to, and if you look at the list of exemptions, you'll see that there are some exemptions in that list that tell you the types of jobs that are not, strictly speaking, what you might describe as a registered nurse. You know, in a, on a floor treating, you know, for instance, I mean, they've been so essential throughout this pandemic. I mean, we, and I do want to make clear, we in no way discount our nurses at Nyack Hospital. We absolutely treasure them. But there are non-traditional jobs which actually require an RN degree. You know, they're not the traditional nursing on the floor. And we list exemptions for some of those, and some of those are included, but they are- But how does that, just to go back, how does that add anything to the definition in the CBA that already says we cover all registered nurses? The only way I could imagine that it adds something, your honor, and Mr. Warren is right that there's not anything on the record in this. There is, there is a category known as nurse of training that some registered nurses receive that put them almost to doctors, but they're not quite to the point where they're licensed as doctors. They do many more responsibilities. I would think that group falls within that to the extent they're not otherwise exempted in the agreement. I can't think of what else that covers except that it may be a way for the physicians that, you know, they think require a registered nurse in it, even though, you know- So let me just, and I understand it's not in the record, so I know we're a little bit hypothetical here, but if I could just pursue that, just one more question on this and I'll let it go, which is, if we were to assume that that's correct, that say that's aimed at fall into that additional basket, have been covered by the disclosures ordered by the district court, that is all registered nurses? Yes, your honor, and they would be covered by the standard that I call for with you is that if they are a member of the bargaining unit, they would be covered by an order that held the audit to members of the bargaining unit. Both of those would be instances in which they are covered. And would all those people as well who fall into this third kind of anomalous category that Judge Nardini has been discussing with you, would they have received received kind of annual communication from the fund asking whether they want to opt in or opt out? So they're kind of in the conversation. Is that correct or is that a misunderstanding? I honestly couldn't tell you, your honor, there's not anything in the record about how communications are conducted between the fund and potentially eligible participants. I don't know whether it's channeled through the union or whether it's channeled through the employer. To my knowledge, we're not the ones channeling it. So I would imagine that it's somehow channeled through union sources. I see. So the union is the one that conducts the discussion about whether people want to opt in or out of the fund if they're in the CDA? I don't know. Again, that's not in the record. You know, I know that we certainly would because we have the open season, just like you do in the federal government, just like my firm does. We have the open season in the fall where you make your decisions about health care. I'm sure that there is some mention in that that, you know, as to what NISDA fund people might need to do. But I can't imagine that we're your arguments. We've kept you well past your time. Now we'll hear a rebuttal from Mr. Warren. And Mr. Warren, feel free to take an extra five minutes if you'd like. Thank you, your honor. So let me start with a clarification about the contribution obligation. The collective bargaining agreement is unambiguous. The employer, Nyack Hospital, owes contributions for all full-time employees covered by the collective bargaining agreement. That's true whether those people enroll or not enroll. They only cease to owe an obligation if the person informs the hospital that they're not enrolling and then they are entitled to a payment. But as the court has pointed out, we're in a situation where the fund has a fiduciary obligation to identify all members, all employees of the hospital who are eligible to participate in the fund. So to the extent that the hospital is arguing we've fulfilled our contribution obligations by paying for the people we reported, that is untrue. The hospital fulfills its contribution obligations by paying for all people for whom it's obligated to contribute. And turning to the issue about distinguishing central states, there were two plaintiffs in the central states case, the Central States Pension Fund and the Central States Health and Welfare Fund. So the court's discussion about why the funds cannot rely on participants applied to both funds, not just pension funds. Let me ask you about the language in central states where Justice Marshall pointed out that there was a very specific grant of trustee power to demand and examine employer records for its employees. And there was a debate about whether the capital E employee, you know, who exactly that meant. But still there was an affirmative disclosure obligation in central states that I didn't see in the trust and other documents that pertain to your client. Am I missing something? The article five, section five of the trust agreement has two sentences. The first sentence says the employer shall make all reports on employer contributions and employee contributions required by trustees. So that's the reporting obligation. And then the second sentence says the trustees may at such times and places as may be appropriate, have an audit made by independent certified public accountants of the payroll and wage records of any employer in connection with the employer contributions. Now there's a critical difference between this language in central states and it's favorable to the funds because the defined term capital E this trust agreement nowhere appears in the section of the trust agreement. There's a defined term employee contributions. That is a separate defined term refers to contributions that employees make either directly or through payroll deductions but has nothing to do with this case. Because there's no issue in the record. There's nothing in the record that discusses employee contributions. So unlike the trust agreement in central states where the district court found it's unambiguously requires all employee records to be audited. The sixth circuit held it unambiguously is limited to capital E employees and the Supreme Court said we're going to construe the agreement the way the trustees have construed it because they have the here there is no limit on the audit authority to employees. The trust agreement says that it applies to all wage all payroll and wage records. Not all financial records. Nobody's asked for all financial records. It's all payroll and wage records. Let me ask a different question. I'm having some difficulty understanding whether you think that the scope of having a legitimate purpose for an audit or for a request that the trustees make is kind of coextensive with their fiduciary duty. So that whether unless whether you can have a breach of fiduciary duty absent a you know if there were no legitimate purpose for the request that is still okay so long as the request is made in good faith and absent some affirmative showing that there was bad faith and that there was a some other kind of breach of fiduciary duty. I'm this is a little bit garbled but but these are concepts that have been thrown around and I would love you to explain their boundaries to me. As I understand the central state's decision the court looked at three three aspects. First it looked at the language. Does the truck does is there an agreement between the fund and the employer that authorizes the fund to audit all the records? Second has the fund presented evidence of legitimate purposes? There were two legitimate purposes presented in central states. First to identify all covered employees who are eligible to participate in the fund and second to collect identify contributions that are owed to the fund. Those are the identical purposes that the trustees had here. There's undisputed evidence in the record that those were the purposes that they had. Those were the purposes that were communicated to the NIAC hospital. The third element in central states is has the employer presented evidence that the purposes presented by funds were not their real purpose or that the scope of the audit otherwise breaches fiduciary duties. Here there is no evidence that it's not the real purpose. Would it ever be that it was not made to further the legitimate purposes of the fund? Well I could imagine circumstances where that might occur. Here what the NIAC hospital is basically saying because you're going to find registered nurses in the payroll registers of the hospital that makes it an illegitimate purpose. All that does is reverse the burden of proof. But let me ask if there were only 30 registered nurses working in a medical center and you had the same documents in place and there were 10,000 workers overall but only 10 registered nurses, would you still be taking the position that an audit was necessary in order to determine whether the correct amount of contributions would have been made? No registered nurses. 10 registered, 30 registered nurses say and 10,000 employees. Mistakes can be made. Intentional hiding of employees can occur. Employees, the Supreme Court recognized that deterring employers from hiding employees and not reporting is legitimate. So the answer is yes. However, I think the audit would be different because the trustee, the auditors might use a sample of the 10,000 people rather than looking at all of them. Isn't the district court entitled in ordering that an audit occur to take into consideration some of the facts such as I've just been laying out about intrusiveness, about possibly inferring ulterior motives in looking at the relative proportion of the intrusion to the likelihood of correcting mistakes at the margin. No one contests that mistakes can be made. Nonetheless, ordering an audit and ordering a specific performance has some elements of discretion committed to the district court. The Supreme Court specifically addressed that in footnote 23 and said that the district court does not have discretion in rewriting the contract. It doesn't have the discretion to say you employer did not build in limits, but we're going to do it for you. The court does have discretion in putting into place confidentiality provisions that are requested by, so for instance, one of the cases that are discussed in the briefs, the district court for the senior executives and the directors of the company, they blacked out the exact salaries, but produced the records so the auditors could check that those people were actually, they could cross check the records of all the employees against the payroll registers, but they protected confidentiality. So the district court has equitable discretion to protect confidentiality interests, not by limiting the scope of the audit, but by looking at confidentiality requirements to protect the employer's interests. Okay. Mr. Warren, if we conclude that the district court erred by not construing the language of the trust agreement and conflated the contractual rights of the trustees with common law rights, wouldn't the appropriate relief be for us to remand it to the district court to construe the trust agreement in the first instance? Your honor, it's our position that the can be reviewed under the trust agreement. Remember, this is a trust agreement that applies to all 45 contributing employers. So the fact that NIAC may say, well, look at our collective bargaining agreement, it doesn't fit well with that, that's not how you construe a trust agreement that applies to all of the employers, and there's no evidence of any other collective bargaining agreement in the record. And so here, I think it's blackletter lawyer under federal common law that whether or not a contract is ambiguous is a question of law that this court can determine. If this court determines that the contract is unambiguous, then it doesn't need to remand it to the district court. If the court does determine that the contract language is ambiguous, then a remand would be appropriate because then you have a disputed issue of material fact. Thank you very much, Mr. Warren. I think we have your arguments well argued. Mr. Polk and Mr. Warren, appreciate your time and attention and your clear explanations. Thank you, your honor. We'll reserve decisions.